IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) | | |
| | ) | Civil No. 3:19-cv-00045 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | VERIFIED COMPLAINT FOR |
| | ) | FORFEITURE *IN REM* |
| $1,500.00 IN U.S. CURRENCY, | ) | |
| $1,500.00 IN U.S. CURRENCY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, United States of America hereby files and serves this
VERIFIED COMPLAINT IN REM and alleges as follows:

## I.    NATURE OF THE ACTION

1.    This is an action to forfeit and condemn specific property
("Defendant property") to the use and benefit of the United States of
America ("Plaintiff") for involvement, as set forth below, in violations of
21 U.S.C. § 846 (attempt and conspiracy), § 841(a)(1) (Prohibited acts A),
and § 843C (Prohibited acts C), and for violations of 18 U.S.C. § 1960
(Prohibition of unlicensed money transmitting business).

2.    The United States believes the Defendant property is subject
to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as money or a thing of
value furnished or intended to be furnished by a person in exchange for

a controlled substance, in violation of subchapter I – Control and Enforcement, of Chapter 13 – Drug Abuse Prevention and Control, and Title 21 – Food and Drugs, of the United States Code, and proceeds traceable to such an exchange, and money used or intended to be used to facilitate any violation of said subchapter.

3.     The Defendant property is also believed to be subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as personal property involved in a transaction or attempted transaction in violation of section 1960 of Title 18, or as property traceable to such property.

## II.     DEFENDANT *IN REM*

4.     The Defendant property is generally described as $1,500.00 in U.S. currency and $1,500.00 in U.S. currency seized in the Southern District of Iowa in January 2019 from two packages/parcels addressed to "M. Putman" in California with a return address of "A. Paulsen" in Clinton, Iowa. The Defendant property is in the custody of the U.S. Postal Inspection Service.

## III. JURISDICTION AND VENUE

5.     This Court has jurisdiction over this case, pursuant to 28 U.S.C. Section 1345 (United States as plaintiff), as an action commenced

by the United States of America, and pursuant to 28 U.S.C. Section 1355(a) (Fine, penalty, or forfeiture), as an action for forfeiture.

6.    This Court has *in rem* jurisdiction and venue over the Defendant property, pursuant to 28 U.S.C. Sections 1355(b) (Fine, penalty, or forfeiture) and 1395(b) (Fine, penalty, or forfeiture), because acts or omissions giving rise to the forfeiture occurred in this district and because the Defendant property was seized from and is located in this district.

## IV. FACTS

7.    The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

8.    The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

9.    Schedule I substances have a high potential for abuse, have no currently accepted medical use in treatment in the United States, and

there is a lack of accepted safety for use of these controlled substances under medical supervision. 21 U.S.C. § 812(b)(1)(A) - (C).

10.   Schedule II substances have a high potential for abuse, the controlled substances have a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions, but use of a  Schedule II controlled substance may lead to severe psychological or physical dependence 21 U.S.C. § 812(b)(2)(A) – (C).

11.   Schedule III substances have a potential for abuse less than the substances in Schedules I and II, have a currently accepted medical use for treatment in the United States, but abuse of the controlled substances may lead to a moderate or low physical dependence or high psychological dependence. 21 U.S.C. § 812(b)(3)(A) – (C).

12.   Schedule IV controlled substances have a low potential for abuse relative to the controlled substances in Scheduled I – III, have a currently accepted medical use in treatment in the United States, but abuse of the controlled substances may lead to limited physical dependence or psychological dependence relative to the controlled substances in Schedule III. 21 U.S.C. § 812(b)(4)(A) – (C).

4

13.   Schedule V controlled substances have a low potential for abuse relative to the substances in the preceding schedules, have a currently accepted medical use for treatment in the United States, but abuse of the controlled substances may lead to limited physical dependence or psychological dependence relative to the controlled substances in Schedule IV. 21 U.S.C. § 812(b)(5)(A) – (C).

14.   Only persons registered by the Attorney General of the United States in accordance with rules and regulations promulgated by the Attorney General may legally manufacture or distribute controlled substances. 21 U.S.C. § 822(a), (b).

15.   Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute a controlled substance, unless authorized by law to do so.  21 U.S.C. § 841(a)(1).

16.   Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions.  21 U.S.C. § 846.

17.   Under the Controlled Substances Act, it is unlawful for a person to knowingly or intentionally use a communication facility, including the U.S. Mail, to facilitate the commission of an act or acts constituting a felony under subchapters I or II.  21 U.S.C. § 843C(b).

18.   It is believed that evidence will show, or will after a reasonable opportunity for further investigation and discovery, that the Defendant property constituted the proceeds of a prohibited controlled substance offense, or was used or intended to be used to facilitate a prohibited controlled substance offense, or was involved in a violation of 18 U.S.C. § 1960.

19.   In late 2018 and early 2019, one or more employees of the Clinton, Iowa U.S. Post Office noticed a Caucasian male engaged in suspicious activity (the "suspicious customer").

20.   The suspicious customer had been coming into the U.S. Post Office weekly since December 2018, mailing one to two packages/parcels per week to the same address in California.

21.   The packages/parcels being mailed typically emitted a strong or pungent odor.

22.   The suspicious customer was usually nervous when conducting the transactions at the U.S. Post Office with the packages/parcels he mailed.

23.   On January 9, 2019, the suspicious customer mailed two packages/parcels to "M. Putman" in Arcata, California, with a return address of "A. Paulsen" in Clinton, Iowa.

24.   The two packages/parcels weighed approximately one (1) pound each, were addressed in the same handwriting, and similarly packaged.

25.   The suspicious packages/parcels were investigated by a U.S. Postal Inspector.

26.   Using a database at his disposal, the U.S. Postal Inspector determined the return address in Clinton, Iowa on the suspicious packages/parcels was legitimate, but no one with the name "A. Paulsen" was on record as residing there.

27.   On January 11, 2019, the U.S. Postal Inspector called "J.F." one of the reported residents of the Clinton, Iowa address.

28.   "J.F." confirmed he lived at the return address under investigation, and said he had lived there with "P.S." for approximately 2 years.

29.   "J.F." denied knowing anyone named "A. Paulsen."

7

30.   "J.F." denied knowing "M. Putman" or anyone from California.

31.   'J.F." denied having mailed any packages/parcels recently from the Clinton, Iowa U.S. Post Office.

32.   "J.F." said he knew nothing about the packages/parcels, and gave no one permission to use his address for mailing them.

33.   The U.S. Postal Inspector also investigated the delivery address, and the name "M. Putman."

34.   Using databases at his disposal, the U.S. Postal Inspector determined the delivery address was legitimate, and indicated "M. Putman" was previously associated with the delivery address in California from November 2016 through May 2017, but not thereafter.

35.   Thus, the packages/parcels were being mailed with a return address in Clinton, Iowa, where the residents denied any knowledge of, or association with, the packages/parcels or with "A. Paulsen," to an address in Arcata, California, where the addressee had not lived in approximately 20 months.

36.   Additional investigation discovered that an "M. Putman" actually lived in Clinton, Iowa, not Arcata, California.

37.   The U.S. Postal Inspector attempted to call "M. Putman" on the phone on January 11, 2019, and was unable to reach him, but left a voice mail, which was never returned.

38.   On January 14, 2019, both suspicious packages/parcels were inspected by an experienced, properly-trained, certified drug-detection canine.

39.   The packages/parcels were hidden by the U.S. Postal Inspector in his offices in Des Moines, in an area known not to contain narcotics a/k/a controlled substances.

40.   The experienced, properly-trained, drug-detection dog was allowed to examine the area, and alerted to the locations where both packages/parcels were hidden.

41.   The experienced, properly-trained, drug-detection dog, therefore, detected the presence of the odor of illegal narcotics or controlled substances associated with the packages/parcels.

42.   The experienced, properly-trained, drug-detection dog was trained to alert to the presence of the odors of numerous illegal controlled substances, specifically marijuana, methamphetamine, cocaine, heroin, and ecstasy.

9

43.     On January 14, 2019, the U.S. Postal Inspector obtained a federal search warrant for the packages/parcels.

44.     In each package/parcel was $1,500 in U.S. Currency, for a total of $3,000.

45.     The U.S. Currency was in multiple layers of wrapping and was vacuum-sealed.

46.     Vacuum-sealing is a common practice used by drug-dealers to try and prevent law enforcement and other people from detecting the odor of illegal narcotics, either emanating from the illegal narcotics or from money or other items associated with illegal narcotics.

47.     On January 16, 2019, a person who self-identified as "Adam Paulsen" called the Clinton, Iowa U.S. Post Office and inquired about two packages he mailed on January 9, 2019.

48.     The U.S. Postal Inspector used the call back number provided, and reached a female, who identified herself as "Adam Paulsen's" mother.

49.     The female advised the U.S. Postal Inspector "Adam Paulsen" did not have a phone, but advised she would contact him via Facebook and have him call back the U.S. Postal Inspector.

10

50.   Later on January 16, 2019, the U.S. Postal Inspector received a telephone call from a blocked number, from a person who identified himself as "Adam Paulsen."

51.   "Adam Paulsen" said he had mailed the packages using the address of a friend, "J.F.," but was told that "J.F." had denied knowing anyone named "A. Paulsen."

52.   "Adam Paulsen" did not explain why he did not use his own mailing address.

53.   "Adam Paulsen" told the U.S. Postal Inspector the packages contained some late Christmas presents for relatives, whose names he could not recall.

54.   It is highly suspicious for a person to be unable to recall the names of relatives to whom he or she is sending a Christmas present, particularly ones as valuable as $1,500 in U.S. Currency.

55.   "Adam Paulsen" falsely said the packages/parcels contained T-shirts and Christmas cards.

56.   The packages/parcels did not contain any T-shirts nor any Christmas cards.

57.   "Adam Paulsen" then changed his story, and said he had been asked to mail the packages for a "buddy," whose name he refused to provide.

58.   It is highly suspicious for a customer of the U.S. Postal Office to decline to provide the name of a person for whom he or she is mailing a package/package/parcel with allegedly legal contents.

59.   "Adam Paulsen" was then told that the U.S. Postal Inspector had opened the packages/parcels pursuant to a search warrant, and that $1,500 in U.S. Currency was found inside each package.

60.   After being advised of this information, Paulsen changed his story for a third time, claiming the money came from odd jobs and his relative, "M. Putman" had asked him to mail the packages/parcels for him.

61.   The packages/parcels were not addressed <u>from</u> "M. Paulsen," but were addressed <u>to</u> "M. Paulsen," in California, at an address where he did not live.

62.   The packages/parcels were addressed from "A. Paulsen" at an address where he did not live, and where the residents chose not to return

the phone call from the U.S. Postal Inspector investigating the suspicious packages.

63.   "Adam Paulsen" said he had previously mailed four (4) "Christmas" packages/parcels to California.

64.   "Adam Paulsen" claimed "M. Putman" was his uncle, but would not provide any contact information for him.

65.   "Adam Paulsen" then changed his story, again, and said he did not know what was in any of the packages/parcels, as he did not package any of them and he sent them at the request of someone else.

66.   At no time did "Adam Paulsen" claim the $3,000 in the packages/parcels belonged to him or that he was its owner.

67.   "Adam Paulsen" had no legitimate reason to provide false information and changing stories to the U.S. Postal Inspector about the contents of, and the circumstances surrounding, the suspicious packages.

68.   After disclaiming all knowledge concerning the contents of the packages/parcels, "Adam Paulsen" declined to speak further with the U.S. Postal Inspector, and ended the conversation.

69.   It is common for people caught being involved in illegal drug dealing, or acting as transmitter of the proceeds of illegal drug dealing,

to tell false and inconsistent stories about suspicious activities in which they are caught engaging.

70.    Dealers of illegal controlled substances typically transport cash used in their business using means and methods designed to try and conceal the cash from detection, and to try and conceal their involvement with illegal activity.

71.    "M. Putman" did not live at, or have any known current connection to, the address to which the suspicious packages were mailed by "A. Paulsen."

72.    "M. Putman," who "Adam Paulsen" claimed at one time was the person for whom he mailed the packages/parcels, has never contacted the U.S. Postal Service or a U.S. Post Office to inquire about the packages/parcels or to claim the Defendant property.

73.    The use of sham addressees is a practice of the drug dealing trade, which affords the person or persons from whom, or to whom, illegal controlled substances, or the proceeds of illegal controlled substances sales, are mailed to disclaim knowledge of, or involvement in, the criminal activity.

74.    "Adam Paulsen" repeatedly provided false information to the U.S. Postal Inspector, which is an indicia of a person involved in illegal activity trying to talk himself out of trouble using changing stories or version of events.

75.    After January 2019, the U.S. Postal Service initiated an administrative forfeiture action against the $3,000, and provided notice of the forfeiture to "Adam Paulsen."

76.    On or about March 21 - March 31, 2019, "Adam Paulsen," who had eventually claimed he did not know what was in the packages/parcels, filed documents contesting the administrative forfeiture of the contents of the packages/parcels, or the $3,000.

77.    Specifically, "Adam Paulsen" made a written statement to the U.S. Postal Service, a federal agency, in which he claimed "This money was earned doing petty work such as tree removal, yard waste, baby sitting, mowing lawns ect.  It's also not illegal to send money clothes and holiday cards through the mail unless the money is over a certain amount an in this case the money wasn't even close to that amount. I did nothing wrong i would like this money."

78.   "Adam Paulsen" did not, in his claim, specifically assert the $3,000 was his property.

79.   In the space where "Adam Paulsen" was asked to provide any documentation in support of his claim, he did not describe or provide any documentation.

80.   It is illegal, under federal law, for a person to distribute a controlled substance to others, unless registered to do so, for a legal purpose.

81.   It is illegal, under federal law, to conspire with other people to sell and/or distribute controlled substances to others in exchange for money.

82.   It is illegal, under federal law, to knowingly and intentionally use any communication facility, including the mail, in facilitating the commission of any act or acts constituting a felony under 21 U.S.C. § 841. Each separate use of the mails is a separate offense.

83.   The profits from the illegal distribution of controlled substances are forfeitable under federal law.

84.   It is illegal, under federal law, to use the U.S. Mail to engage in an unlicensed money transmitting business.

16

85.   It is illegal, under federal law, for a person to knowingly conduct all or part of an unlicensed money transmitting business, which affects interstate commerce, which involves the transportation of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity.

86.   Any person involved in the transmission of the Defendant property as part of money transmitting business was required by law to have been registered with the U.S. Department of the Treasury, Financial Crimes Enforcement Network (FINCEN), when doing so.

87.   The property involved in an illegal, unlicensed money transmitting business is forfeitable under federal law.

## V. Count One
## (Forfeiture Under 21 U.S.C. § 881(a)(6))

88.   Plaintiff repeats and realleges each and every allegation set forth above.

89.   The United States has reason to believe the Defendant property constitutes moneys or other things of value furnished or intended to be furnished in exchange for a controlled substance, and/or were used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, § 843, and § 846 et seq.

17

90.    As a result of the foregoing, the Defendant property is liable to condemnation and to forfeiture to the United States for its use, in accordance with 21 U.S.C. § 881(a)(6).

## VI. COUNT TWO
### (FORFEITURE UNDER 18 U.S.C. § 981(a)(1)(A) & 1960(b)(1)(B)

91.    Plaintiff repeats and realleges each and every allegation set forth above.

92.    The United States has reason to believe  that on or about January 2019, one or more persons knowingly transported the Defendant property on behalf of a money transmitting business, as that term is defined in 31 U.S.C. § 5330(d)(1) and the regulations promulgated thereunder, including 31 C.F.R. § 103.41 and § 103.11(uu)(5).

93.    Title 18 U.S.C. § 1960(b)(1)(B) defines an "unlicensed money transmitting business" as any money transmitting business that 1) affects interstate or foreign commerce in any manner or degree, and 2) fails to comply with the money transmitting business registration requirements under 31 U.S.C. § 5330, or the regulations prescribed thereunder.

94.    The money transmitting business referred to herein affected interstate commerce and failed to comply with the money transmitting

18

business registration requirements under 31 U.S.C. § 5330, and the regulations prescribed under such section, as required by 18 U.S.C. § 1960(b)(1)(B). Accordingly, the money transmitting business on whose behalf the Defendant property was being transported was an unlicensed money transmitting business.

95.  Operation of an unlicensed money transmitting business is a violation of 18 U.S.C. § 1960(a), and all property involved in such violation is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

96.  As a result of the foregoing, the Defendant property is liable to condemnation and to forfeiture to the United States for its use, in accordance with 18 U.S.C. § 981(a)(1)(A).

### VII. COUNT THREE
### (FORFEITURE UNDER 18 U.S.C. § 981(a)(1)(A) & 1960(b)(1)(C)

97.  Plaintiff repeats and realleges each and every allegation set forth above.

98.  The United States has reason to believe that on or about January 2019, in the Southern District of Iowa, one or more persons knowingly transported the Defendant property on behalf of an unlicensed money transmitting business, as that term is defined in 18 U.S.C.

19

§ 1960(b)(1)(C), knowing the Defendant property was derived from a criminal offense or was intended to be used to promote or support an unlawful activity.

99. Section 1960(b)(1)(C) defines an unlicensed money transmitting business as any money transmitting business which 1) affects interstate or foreign commerce, and 2) involves the transportation or transmission of funds that the person conducting, controlling, managing, supervising, directing, or owning the business knows (A) to have been derived from a criminal offense or (B) are intended to be used to promote or support an unlawful activity.

100. For purposes of Section 1960(b)(1)(C), money transmitting is defined to include the conduct described in Section 1960(b)(2).

101. Operation of an unlicensed money transmitting business is a violation of 18 U.S.C. § 1960(a), and all property involved in such violation is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

102. As a result of the foregoing, the Defendant property is liable to condemnation and to forfeiture to the United States for its use, in accordance with 18 U.S.C. § 981(a)(1)(A).

## VIII. CONCLUSION

WHEREFORE, the plaintiff requests that the Court issue a warrant and summons for the arrest and seizure of the Defendant property; that notice of this action be given to all persons known or thought to have an interest in or right against the property, that the Defendant property be forfeited to the United States, and that it be awarded its costs and disbursements in this action, and such other and further relief as the Court deems proper and just under the facts and applicable law.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By:    /Craig Peyton Gaumer
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, W. Kevin Marshall, hereby verify and declare under penalty of perjury that I am a United States Postal Inspector with the U.S. Postal Inspection Service, and that I have read the foregoing Verified Complaint *in Rem, United States v. $1,500 in U.S. Currency and $1,500 in U.S. Currency* and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as United States Postal Inspector with the U.S. Postal Inspection Service.

Dated: June __17__, 2019.

W. Kevin Marshall, U.S. Postal Inspector
United States Postal Inspection Service

22